## DAVIES v. SCOTT.

### December 31, 1836.

*Rules to show cause why the writ of attachment should not be quashed, and the service of the capias ad satisfaciendum set aside.*

A *fieri facias, capias ad satisfaciendum,* and writ of *attachment,* under the act of 16th June, 1836, relating to executions, may be *issued* cotemporaneously.

The issuing of a *fieri facias* and *capias ad satisfaciendum,* but which remain unexecuted, do not constitute an election by the plaintiff which bars a resort afterwards to an attachment.

*Aliter,* if the *capias ad satisfaciendum* is executed.

Where a plaintiff issued a *capias ad satisfaciendum* and a writ of *attachment* under the 35th section of the act of 16th June, 1836, and delivered them to the sheriff with instructions not to execute the *capias ad satisfaciendum,* and the defendant tendered to a clerk of the sheriff, in the absence of the latter, and of the officer who had the writ, a discharge from the judges of the Court of Common Pleas, founded on a bond voluntarily entered into by the defendant in the particular case conditioned for his appearance to take the benefit of the insolvent laws, and the clerk received such discharge by mistake, all of which appears by the sheriff's return to the *capias ad satisfaciendum,* the court set aside the service of the *capias ad satisfaciendum,* and refused to quash the previous service of the writ of attachment.

IN the above case, the following facts appeared. On the 23d of August, 1836, a *fieri facias* and *capias ad satisfaciendum*

[Davies v. Scott.]

were issued upon the judgment obtained in this case, returnable on the next succeeding return day which was the 5th of September. They were placed, on the same day, in the hands of the sheriff.

September 1, 1836, a writ of *attachment* under the 35th section of the act relating to executions, was also issued on the same judgment, and made returnable on the same day with the *fieri facias* and *capias ad satisfaciendum.*

To the *fieri facias* the return of the sheriff was " *nulla bona."* His return to the attachment was as follows: " September 1st, 1836, made known to John Swift, Esq., mayor of the city of Philadelphia, Cornelius Stevenson, treasurer of the said city, and Frederick Graff, Esq., &c. &c. September 2d, 1836, attached *Alexander Scott,* by serving a copy of the within writ on him."

To the *capias ad satisfaciendum* the following special return was made by the sheriff:

" September 5th, 1836, C. C. and defendant discharged by Prothonotary Morris; for amendment, see accompanying statement.

" On the 23d August, 1836, a *capias ad satisfaciendum* and *fieri facias* in the above case, were brought into my office and delivered to one of my deputies. Some days after he had received them, S. J. *Henderson,* Esq., plaintiff's attorney, gave this deputy instructions not to execute the *capias ad satisfaciendum ;* and I knew of no personal property upon which to make a levy, under the *fieri facias.* Neither of these writs were therefore executed by the officer in whose possession they remained. The same officer had also another *capias ad satisfaciendum* placed in his hands, in another case, in which Scott was also defendant, and mentioned to Mr. *Hopkins,* counsel for the defendant, that such writs were in his possession. Mr. *Hopkins* cautioned him against laying a finger upon the defendant, as he had real estate of which a description would be furnished. This caution prevented the officer from executing the *capias ad satisfaciendum* in the present case.

" On the 5th of September, the return day of the two writs issued in the above case (while they were both in the possession of the deputy, to whom they had been delivered) between the hours of 9 and 11 A. M., the defendant Scott came with Mr. *E. K. Price,* as his counsel, into my office, and stated that he understood a

[*Davies v. Scott.*]

*capias ad satisfaciendum* had been issued against him, and that he came to surrender himself. But the officer in whose possession the writs were then, was absent from the office, and the *book-keeper* then in the office, was ignorant of the instructions given by *Henderson*.

" The *fieri facias* and *capias ad satisfaciendum* were both returned on the 6th September, the day after the return day.

" The writ of attachment issued in this case was served on the mayor of the city and city treasurer, on the 1st September, 1836, the day on which it was brought into my office.

" All the three writs above mentioned, viz.: the *fieri facias*, *capias ad satisfaciendum*, and writ of attachment, were issued in the case of Davies *v.* Scott, and were all returnable on September 5th, 1836.

" Supposing the writ of *capias ad satisfaciendum* to be in force, the book-keeper went with the defendant, Scott, to the office of the prothonotary of the Common Pleas, and received from that officer a discharge."

On behalf of the *defendant*, a rule was obtained to show cause why the writ of *attachment* should not be quashed. And the plaintiff obtained a rule to show cause why the service of the *capias ad satisfaciendum* should not be set aside.

*Price*, appeared for the first mentioned rule. He argued, 1. That the *fieri facias* and *capias ad satisfaciendum* having been issued on the 23d day of August, the attachment could not be issued while the former were in force. 13 *Law Library* 106. Section 20 of the act is conclusive. The party is put to his election as to his writ, and he has here elected to issue the *fieri facias* and *capias ad satisfaciendum*. The act provides a new remedy, and must be strictly construed. 2. The *fieri facias* and *capias ad satisfaciendum* having been executed, the defendant is discharged. The execution of the *capias ad satisfaciendum* operates as satisfaction. He also cited : 1 *Tr. & Haly's Penn. Prac.* 290 ; 2 *Binn.* 218 ; 8 *Mod.* 302 ; 11 *S. & R.* 299 ; 13 *S. & R.* 265 ; 11 *East* 297 ; 28 *E. C. L.* 423.

*Henderson* and *J. M. Read*, contra ; cited Ladd *v.* Blunt, 4 *Mass. R.* ; 27th and 28th sections of the act relating to executions ; 13 *Law Library* 74 ; 3 *S. & R.* 142, and *Purd. Dig.* 167.

[Davies v. Scott.]

The opinion of the Court was delivered by

STROUD, J.—The two rules taken in this case bear such a relation to each other, that counsel have not thought a distinct discussion of them necessary. And we will dispose of them together.

The *writ of attachment* is prescribed in the 35th section of the act of last session, relating to executions. It is a new provision in the law, and some doubt has been expressed whether it is to be considered as an *execution* or a species of original process.

We regard it in the light of an *execution*. And so far as respects the questions raised in the argument before us, whatever rule of law would apply to a *fieri facias*, will apply with equal fitness to the *writ of attachment*.

In this particular, the views of the defendant's counsel coincide with what I have just expressed, and he has accordingly urged, as a reason for setting aside the service of the *attachment*, the principle recognised in Young *v.* Taylor, 2 *Binney* 218, that where a plaintiff levies a *fieri facias* upon the estate of the defendant, and whilst this is in force, charges him in execution upon a *capias ad satisfaciendum* founded on the same judgment, an option is cast upon the defendant to set aside the service of one or the other of these writs at his pleasure.

As a general proposition, it is conceded, that such is the law. But it is equally certain, that the ground of this rule is the supposed *oppression* of the defendant by the concurrent exercise on the part of the plaintiff of the two kinds of judicial process, both tending to the same end. A more flagrant *abuse* of the process of the court, if done by the express direction of the plaintiff, could not be imagined. To deserve this character, however, the plaintiff must be the efficient cause of the abuse, and the defendant a constrained and involuntary sufferer. But, according to the return of the sheriff, the relation of the parties to the execution of the *capias ad satisfaciendum* in the present case was the reverse of this hypothesis. The plaintiff *countermands* the *capias ad satisfaciendum*—the sheriff's deputy to whom its execution had been committed, and in whose custody it was from its delivery till after the return day, purposely abstains from executing it—serves, in fact, the *attachment* on the defendant, *personally*, without attempting to arrest him on the *capias ad satisfaciendum*—a neglect, in itself, equivalent to an escape, if the writ had not been countermanded previously—and after this

[Davies v. Scott.]

service, and of course with a full knowledge of it, the defendant of *his own accord*, unwarned and uninvited by the sheriff, goes to the sheriff's office, in the absence of the deputy having the *capias ad satisfaciendum* in his possession, and induces another officer, ignorant of the countermand, whose accustomed duties were not those of a bailiff, to accompany him, *as if* in custody under the *capias ad satisfaciendum*, to the prothonotary's office, where the usual formal discharge under the insolvent law is immediately procured. Upon this statement, to regard the plaintiff as an aggressor, and the defendant the victim of oppression, would be a gross perversion of language. And as nothing tends more certainly to bring the administration of justice into contempt than to permit a meritorious party to be put in the wrong by the fraudulent contrivance of his adversary, we have no hesitation in refusing the defendant's application to set the service of the attachment aside.

This conclusion, in effect, decides the rule on the part of the plaintiff to set aside the service of the *capias ad satisfaciendum*. It is manifest that this service, as it is termed, would not have taken place, if the proper officer had not been absent when the defendant called at the sheriff's office. The book-keeper, not having the writ, it is not easy to see how he could arrest the defendant; and according to the return, he certainly did not. Being ignorant of the countermand of the writ and unacquainted with the proper duties of a bailiff, he was induced to yield to the defendant's solicitation and inform the prothonotary that he was under arrest. The whole was the result of a purposed imposition of the defendant, and is subject therefore to the general rule which attaches to every species of fraud. The service of the *capias ad satisfaciendum* is accordingly set aside.

Another branch of the defendant's application is to *quash* the *writ of attachment*. The issuing of the *fieri facias* and *capias ad satisfaciendum*, constituted, it is said, an *election* by the plaintiff, which barred a resort afterwards to the *attachment*.

This deduction, it is argued, is warranted by the 20th section of the execution act. As this is but a *proviso* to the 19th section, to be intelligible, the two must be taken together. They read thus: Sect. XIX. "The plaintiff in any judgment which shall be obtained, &c., for the recovery of money, may have execution thereof, subject to the restrictions and qualifications herein pro-

[Davies v. Scott.]

vided, against the person and estate of the defendant in the following order, to wit: I. Upon the personal estate of the defendant. II. Upon his real estate. III. If he have neither personal nor real estate, liable to execution, then upon the person of the defendant. Sect. XX. *Provided*, That it shall be lawful for the plaintiff to have execution against the real estate of the defendant, or against his person, in the manner hitherto allowed, or *at his election* he may proceed to obtain the satisfaction of his judgment out of such personal estate as is by this act now first made liable to execution."

The *election* here mentioned is a privilege of the *plaintiff* irrespective of the defendant's wishes. It is a dispensation of the rigour of the 19th section, which exacts a levy on the *entire personal* estate, before recourse can be had to the *real* estate or the person of the defendant molested. But as by a subsequent section of the same statute, a certain description of *personal* property cannot be made available to the plaintiff but by the very uncertain and dilatory proceeding of *attachment*, it is not made *compulsory* on him to prosecute this writ, but he is permitted to levy on real estate when this can be found, or in defect of this, may direct a *capias ad satisfaciendum* against the defendant's person. Of what importance, then, is it to the defendant, that the plaintiff, who on general principles, is restrained from the execution of more than one judicial writ, should be debarred from using the *attachment* from the mere fact, that shortly before, he had directed a *capias ad satisfaciendum* to be issued? To permit the plaintiff to abandon the *capias ad satisfaciendum*, is to protect the defendant's person—the grand object of the 19th section, which is but a fresh affirmation of the cherished policy of the commonwealth for at least a quarter of a century. *Practically*, therefore, the construction contended for, would conflict with the very spirit of this part of the act,—might, in many instances, be injurious to the plaintiff, and could in no case, in a just sense, be advantageous to the defendant.

Considerations of this nature, have led to the abolition of the doctrine, analogous to what has been claimed by the defendant's counsel, on the present occasion, in respect to the use of a *fieri facias* and *capias ad satisfaciendum*. It is well settled now in the English courts, that both these writs may be issued at the same

time, and placed together in the sheriff's hands for execution, who may execute the one or the other as he judges most advisable.    Miller *v.* Parnell, 1 *E. C. L. R.* 414 ; Primrose *v.* Gibson, 16 *E. C. L. R.* 78.    The *use* of the writ is held to be the proper evidence of an *election.*  Miller *v.* Parnell.   With us also, these writs may be issued cotemporaneously—Allison *v.* Rheem, 3 *S. & R.* 142—and the practice is sustained on the ground of convenience.    *Ibid.*

But giving to the language of the 20th section its fullest force, it is not stronger than that of the stat. of Westminster 2, ch. 18, in regard to the writ of *elegit.*    " *Cum debitum fuerit recuperatum vel in curia regis recognitum, vel damna adjudicata,* sit de cætero IN ELECTIONE illius qui sequitur pro hujus modi debito aut damnis sequi breve quod vice com. fieri faciat de terris," &c.    According to Lord Coke, 2 *Inst.* 394, after the suing out of the *elegit,* the plaintiff could not have a *capias.*    But this rigid construction did not continue long.    *Bingham* alludes to the change in this way : " on further consideration of the statute of Westminster 2, it was adjudged that an award of an *elegit* on the roll should be no longer a bar to an execution by *capias ad satisfaciendum* or *fieri facias,* but only the sheriff's return that he had *delivered land* according to the exigence of the writ."    *Bing. on Execution* 177. The reason of the prevailing doctrine is very clearly and sensibly stated by the court in Beacon *v.* Peck, 1 *Strange,* 226.    " The election," it is there said, " is not complete unless the plaintiff has some benefit from the land : for the *taking out* the writ is not an *actual* election, but only in order to an election."

This decision, it is true, is nothing more as to the facts of the cause in *Strange* than that a resort, primarily, to an *elegit* should not conclude the plaintiff from other process when the *elegit* had proved fruitless.    Nevertheless, according to the ancient doctrine, which was grounded expressly upon the language of the statute, the very entry of an *elegit* on the roll was a determination of the plaintiff's choice.    And regarded in the light of evidence of his purpose, it is certainly as satisfactory as the *actual* execution of the writ could be.    The very entry on the roll imports, the exercise of deliberate choice *prior* to the award of the writ.    " The said A. B. by his attorney, &c., according to the form of the statute, &c., *chooses* to be delivered to him," &c.    *Tidd's Prac.*

[Davies v. Scott.]

*Forms* 397, or in the original entries " *quod elegit sibi execu-tionem,*" &c.   2 *Inst.* 395.

Indeed, looking at the end as well as the terms in which they are framed, the suing out of *fieri facias* and *capias ad satisfa-ciendum, contemporaneously,* is utterly incongruous.   Each issues for the whole debt, and when used, is for the time, regarded as satisfaction; yet this and similar refinements have given place to just notions of practical convenience; and we should hold our-selves authorized in applying a precedent, so salutary to the pre-sent inquiry, if we had nothing more stable to rest upon.

But the words of the 20th section will bear this interpretation without the slightest violence.   " It shall be lawful for the plain-tiff to *have execution* against the real estate of the defendant or against his person, *in the manner hitherto allowed,* or, at his elec-tion, he may proceed to obtain satisfaction," &c.

The mere *exit* of a writ is not the *execution* of it.   This is plainly the meaning here—for it is execution *in the manner hitherto allowed;* and that as is well known, and has been before particularly adverted to, was held to consist in nothing short of actual levy under the one writ, and a corporal caption by the other; and until *execution* be had, under a *fieri facias* or *capias ad satisfaciendum,* the right to issue an attachment may be exercised.

Rule to quash the attachment discharged, and to set aside the service of the *capias ad satisfaciendum* absolute.