DOANE (PENHALLOW v.). See Case No. 10,925.

DOANE, The MARY. See Case No. 9,205.

DOANE, The RICHARD. See Case No. 11,-765.

DOBBIE (WILKINSON v.). See Case No. 17,670.

## Case No. 3,941.

### DOBBIN v. ALLEGHENY.

[3 West. Law Month. 74; 7 Pittsb. Leg. J. 282; 2 Pittsb. Rep. 120.]

Circuit Court, W. D. Pennsylvania. March 13, 1860.

EXECUTION—SPECIAL FI. FA.—CUMULATIVE REMEDIES—ADOPTION OF STATE PROCESS—CONSTITUTIONAL LAW.

1. The issue of a special fi. fa., under the act of 1834, and which has been executed and returned by the marshal, does not conclude the plaintiff, but he may resort to his common law writ of fi. fa., to obtain satisfaction of his judgment. He may have several writs in succession; or suing but one, he may abandon it before it is executed, and sue out another; or he may even have several writs running at the same time, provided they all be of the same species.

2. The taking out of the writ is not an election, but only in order to an election.

3. An attachment execution, under the act of 1836, is in substance, if not in form, an execution, and such writ may issue pending a fi. fa.

4. The remedies of a plaintiff are cumulative and successive, and the pursuit of one remedy will not deprive him of another.

5. The courts of the United States may, in their discretion, adopt any part, or all of the remedies provided by the legislature of a state. This delegation of this power by congress, is held to be constitutional, by the supreme court of the United States.

6. The adoption of the act of Assembly of Pennsylvania, of 1834, as part only of the final process of the United States circuit court, to enforce judgments against counties, *held* to be within the limits of their legitimate and constitutional powers.

This was a motion to set aside a fi. fa., by virtue of which the U. S. marshal had levied on 14,000 shares of stock in the Allegheny Valley Railroad Company, and 15,000 shares in the Connellsville Railroad Company, owned by the defendant.

Judge Shaler, for plaintiff.

Mr. Geyer and Mr. Williams, for defendant.

McCANDLESS, District Judge. This case was tried by a jury at the last term. A verdict was rendered for plaintiff, on the 28th of November, for the sum of $7,525.50, and a judgment entered on the 6th day of December, 1859. On the 19th of the same month, plaintiff's counsel issued a special fi. fa., under the act of 1834, returnable to the first Monday of February. On the 4th of February, the marshal made return to this writ, and it not appearing, either by it or aliunde, that at the date of the service there were "any unappropriated moneys in the treasury of the county," nor that "any moneys have since been received for the use of said county," the extraordinary power of

this court could not be invoked "to enforce obedience to such writ of attachment." A power, it should be remembered, which, in this jurisdiction, is not satisfied by a fine, but by imprisonment until the contempt is purged, and from the penalties of which the constitutional clemency of the president of the United States cannot relieve the offending party. This writ, proving fruitless, the plaintiff resorts to his common law remedy, and issues an ordinary fi. fa., upon which the marshal seizes the stock held by the county, in the Allegheny Valley and Connellsville Railroads, amounting to upwards of a million of dollars. A motion is now made to set this execution aside, upon the ground that the plaintiff, having issued his writ under the act of 1834, has made his election, and is concluded; and that this court, in adopting that act as a part of its final process, had no authority to grant an optional remedy. These points will be considered and decided in their proper order; and to arrive at an accurate conclusion upon a question which involves the destination of so large an amount of public property as is levied on in this case, we have examined all the authorities bearing upon the topic, within our reach.

1. As to the first point submitted. It will be observed that the special fi. fa. has performed its office; it has been executed and returned. Two different species of execution cannot be executed at once on the same judgment, nor a second writ of the same, or of a species different from its forerunner, till that has, by return, been proved insufficient. 8 Mod. 302; Bingh. Ex'ns, 175. The party for whom judgment was given, may have a writ of fieri facias, or elegit, or levari facias, or capias ad satisfaciendum, at his option; or he may have them all in succession until his judgment is satisfied; or suing out one, he may abandon it before it is executed, and sue out another; or he may even have several writs running at the same time, provided they all be of the same species. Archb. Pr. C. P. 254; Tidd, Pr. 901; 2 Paine & D. Pr. 290; 8 Johns. 388. So, with respect to elegit, if the land be extended upon an elegit, the plaintiff is forever barred from having another execution; but if he levies on the goods only, and the sheriff returns nihil as to the lands, a ca. sa. may issue for the residue, or a fieri facias; for the election is not complete unless the plaintiff had some benefit from the land; for the taking out of the writ is not an actual election, but only in order to an election. 1 Sell. Pr. 536; 1 Strange, 226; Tidd, Pr. 1022. An attachment execution under the 35th section of the act of 1836, is process to enforce the judgment; and it is in substance, if not in form, an execution. It differs from a fieri facias essentially only in this, that it reaches effects, from which the debt could not otherwise be levied. 1 Harris [13 Pa. St.] 394. And yet the supreme court of Pennsylvania

have decided that the plaintiff may issue an execution attachment pending a fi. fa. 5 Watts and S. 222. It is an execution so far collateral to the judgment that it may proceed simultaneously with the ordinary executions. 2 Casey [26 Pa. St.] 103. The plaintiff can have only one satisfaction, but is entitled to all process necessary to obtain that. In this connection, I am happy to have found a decision of the supreme court of the United States, delivered by Mr. Justice Baldwin, a great and good judge, than whom no one was more profoundly learned in the doctrines of the common law. It bears directly on this point. In Taylor v. Thompson, 5 Pet. [30 U. S.] 369, he says: "The plaintiff had an undoubted right to an execution against the person, and the personal or real property of the defendant; he has his election; but the adoption of any one does not preclude him from resorting to the other, if he does not obtain satisfaction of the debt on the first execution. His remedies are cumulative, and successive, which he may pursue until he reaches that point at which the law declares his debt satisfied. We know of no rule of law which deprives a plaintiff in a judgment of one remedy by the pursuit of another, or of all which the law gives him." It follows, then, both from reason and authority, that the first writ did not exhaust the remedy of the plaintiff in this case, but that he may issue subsequent and successive writs until he obtains satisfaction of his judgment.

2. Upon the second point submitted, it was contended, with great earnestness, by the learned counsel for the defendant, that this court has exceeded its authority in adopting the act of 1834, with a provision rendering it optional with the party to pursue it or not at his pleasure—that we were bound to constitute it, as the exclusive final process, to enforce judgment against a county. But such is not the law. It is well settled in [Wayman v. Southard] 10 Wheat. [23 U. S.] 1, and [Bank of U. S. v. Halstead] Id. 51, and in [Beers v. Haughton] 9 Pet. [34 U. S.] 329, by the supreme court of the United States, that this court may accept and adopt any part or all the remedies provided by the legislature of the state, at our discretion. It was there held, that this delegation of power by congress, was perfectly constitutional; that the power to alter or add to the proceedings in a suit, embraced the whole progress of such suit, and every transaction to it, from its commencement to its termination, and until the judgment should be satisfied; and that it even authorized the courts to regulate the conduct of the officer in the execution of final process, in giving effect to its judgment. And it was there emphatically laid down, that a general superintendence over this subject, was properly within the judicial province, and has always been so considered. That this provision enables the courts of the Union to make

such improvements in their forms and modes of proceeding, as experience may suggest. It was intended to adopt and conform to the state process and proceedings, as the general rule, but under such guards and checks as might be necessary to insure the due exercise of the powers of the courts of the United States. In adopting, therefore, this act of 1834, as part only of the final process of this court in proceedings against counties, we acted within the limits of our legitimate and constitutional powers.

We entertain no doubt of the regularity of this execution. The rule is discharged, and unless this judgment is paid, the marshal must proceed with sale. Rule discharged.

[Davies v. Scott, 2 Miles, 52; Grant v. Potts, Id. 164; Tanis v. Wardle, 5 Watts & S. 222; Pontius v. Nesbit, 4 Wright [40 Pa. St.] 309. For a form of the writ provided by the act of 1834, see Hewson v. The Northern Liberties, 1 Pittsb. Leg. J. 322.][1]